**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK**
_____

**CATHLEEN BULINSKI,**

                 **Plaintiff,**

                                             **Civil No. 6:01-CV-1148**
            **v.**                                                 **(GLS)**

**COMMISSIONER OF SOCIAL SECURITY,**

                 **Defendant.**
_____

**APPEARANCES:**              **OF COUNSEL:**

**FOR THE PLAINTIFF:**

Office of Peter W. Antonowicz     PETER W. ANTONOWICZ, ESQ.
1300 Floyd Avenue
Rome, New York 13440-0660

**FOR THE DEFENDANT:**

HON. GLENN T. SUDDABY       WILLIAM H. PEASE
United States Attorney            Assistant U.S. Attorney
P.O. Box 7198
100 S. Clinton Street
Syracuse, New York 13261-7198

**Gary L. Sharpe
U.S. District Judge**

**DECISION AND ORDER**

**I. Introduction**

On June 17, 2001, Cathleen Bulinksi (Bulinski) challenged the denial of disability benefits by the Commissioner of Social Security pursuant to 42 U.S.C. § 405(g).  Having reviewed the administrative record, the court affirms the Commissioner's decision because it was based on substantial evidence.

**II. Procedural History**

After Bulinski filed for disability benefits[1] in November 1996, her application was denied, and a hearing was conducted by Administrative Law Judge (ALJ) Daniel G. Heely.  On September 16, 1998, the ALJ issued a decision denying benefits, and that decision became the Commissioner's final determination.

**III. Contentions**

Bulinski contends that the Commissioner's decision is not supported by substantial evidence.  More specifically, she claims that the ALJ erroneously: (1) assessed her residual functional capacity (RFC); (2)

---

[1] Bulinski met the Social Security Act insured status requirements in November 1996, and she continued to meet them at all relevant times.  (Tr. 16).  "(Tr. )" refers to the page of the Administrative Transcript in this case.

2

disregarded the opinion of her treating physician; and (3) mischaracterized her daily activities.  The Commissioner counters that substantial evidence supports the ALJ's disability decision.

## IV.  Facts

The evidence in this case is undisputed, and the court adopts the parties' factual recitations.  *See Pl.'s Br., pp. 3-4, Dkt. No. 6; Def.'s Br., pp. 2-9, Dkt. No. 8.*

## V.  Discussion

### A.  Standard and Scope of Review

A court's review of the Commissioner's final decision is limited to determining whether the correct legal standards were applied and whether substantial evidence supports the decision.  *Urtz v. Callahan*, 965 F. Supp. 324, 326 (N.D.N.Y. 1997) (citing *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987)).  Although the Commissioner is ultimately responsible for determining a claimant's eligibility, the actual disability determination is made by an ALJ.  The ALJ's decision is subject to judicial review.  A court may not affirm an ALJ's decision if it reasonably doubts whether the proper legal standards were applied, even if it appears to be supported by substantial evidence.  *Johnson*, 817 F.2d at 986.  In addition, an ALJ must

3

set forth the crucial factors justifying his findings with sufficient specificity to allow a court to determine whether substantial evidence supports the decision. *Ferraris v. Heckler*, 728 F.2d 582, 587 (2d Cir. 1984).

A court's factual review of the Commissioner's final decision is limited to the determination of whether there is substantial evidence in the record to support the decision. 42 U.S.C. § 405(g); *see Rivera v. Sullivan*, 923 F.2d 964, 967 (2d Cir. 1991). "Substantial evidence has been defined as such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Williams ex rel. Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988) (citations omitted). It must be "more than a mere scintilla" of evidence scattered throughout the administrative record. *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Alston v. Sullivan*, 904 F.2d 122, 126 (2d Cir. 1990). "To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams*, 859 F.2d at 258. However, a reviewing court cannot substitute its interpretation of the administrative record for that

4

of the Commissioner if the record contains substantial support for the ALJ's decision. *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972); *see also Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

The court has authority to reverse with or without remand. 42 U.S.C. § 405(g). Remand is appropriate where there are gaps in the record or further development of the evidence is needed. *See Parker v. Harris*, 626 F.2d 225, 235 (2d Cir. 1980); *Cutler v. Weinberger*, 516 F.2d 1282, 1287 (2d Cir. 1975) (remand to permit claimant to produce further evidence). Reversal is appropriate, however, when there is "persuasive proof of disability" in the record and remand for further evidentiary development would not serve any purpose. *Parker*, 626 F.2d at 235; *Simmons v. United States R.R. Ret. Bd.*, 982 F.2d 49, 57 (2d Cir. 1992); *Carroll v. Sec'y of HHS*, 705 F.2d 638, 644 (2d Cir. 1983) (reversal without remand for additional evidence particularly appropriate where payment of benefits already delayed for four years and remand would likely result in further lengthening the "painfully slow process" of determining disability).

**B.    Five-Step Disability Determination**

The definition of "disabled" is the same for purposes of receiving Social Security Disability Insurance (SSDI) and Supplemental Security

Income (SSI) benefits. To be considered disabled, a plaintiff seeking SSDI or SSI benefits must establish that she is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months...." 42 U.S.C. §§ 423(d)(1)(A),1382c(a)(3)(A).[2] The Commissioner uses a five-step process to evaluate SSDI and SSI claims. 20 C.F.R. §§ 404.1520, 416.920.[3] Step One requires the ALJ to determine whether the claimant is presently engaging in substantial gainful

---

[2] In addition, a claimant's

> physical or mental impairment or impairments [must be] of such severity that [s]he is not only unable to do h[er] previous work but cannot, considering h[er] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which [s]he lives, or whether a specific job vacancy exists for h[er], or whether [s]he would be hired if [s]he applied for work.

42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

Therefore, a plaintiff must not only carry a medically determinable impairment but an impairment so severe as to prevent her from engaging in any kind of substantial gainful work which exists in the national economy.

[3] The court notes that revised versions of these sections came into effect in September 2003. *See* 68 Fed. Reg. 51161, 51164 (Aug. 26, 2003). In the revised versions, paragraph (e) clarifies the application of the RFC determination. New paragraphs (f) and (g), with certain modifications, correspond to the prior versions' paragraphs (e) and (f), respectively. These revisions do not affect the Five-Step Disability Determination sequence. The revised versions have no effect on the outcome of this case. For considerations of uniformity, and because the ALJ's decision came under the old versions, the court retains the old nomenclature in its analysis.

6

activity (SGA). 20 C.F.R. §§ 404.1520(b), 416.920(b). If a claimant is engaged in SGA, she will not be considered disabled. If the claimant is not engaged in SGA, Step Two requires the ALJ to determine whether the claimant has a severe impairment. 20 C.F.R. §§ 404.1520(c), 416.920(c). If the claimant is found to suffer from a severe impairment, Step Three requires the ALJ to determine whether the claimant's impairment meets or equals an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 §§ 404.1520(d), 416.920(d). If the impairment meets or equals a listed impairment, the claimant is presumptively disabled. *Ferraris*, 728 F.2d at 584. If the claimant is not presumptively disabled, Step Four requires the ALJ to consider whether the claimant's Residual Functional Capacity (RFC) precludes the performance of her past relevant work. 20 C.F.R. §§ 404.1520(e), 416.920(e). At Step Five, the ALJ determines whether the claimant can do any other work. 20 C.F.R. §§ 404.1520(f), 416.920(f).

The claimant has the burden of showing that she cannot perform past relevant work. *Ferraris*, 728 F.2d at 584. However, once the claimant meets that burden, benefits can only be denied by showing, with specific reference to medical evidence, that the claimant can perform some less demanding work. *See White v. Sec'y of HHS*, 910 F.2d 64, 65 (2d Cir.

1990); *Ferraris*, 728 F.2d at 584.  In making this showing, the ALJ must consider the claimant's RFC, age, education, past work experience, and transferability of skills, to determine if the claimant can perform other work existing in the national economy.  20 C.F.R. §§ 404.1520(f), 416.920( f); *see New York v. Sullivan*, 906 F.2d 910, 913 (2d Cir. 1990).

Here, the ALJ found that Bulinski satisfied Step One because she had not engaged in substantial gainful activity[4] since October 17, 1996, the alleged onset day of her disability.  In Step Two, the ALJ determined that she suffered from fibromyalgia and collagenous colitis.  In Step Three, the ALJ determined that her impairments failed to equal an impairment or combination of impairments listed in, or medically equal to, one listed in Appendix 1, Subpart P, Regulations No. 4.  In Step Four, the ALJ determined that Bulinski was able to perform her past relevant work as a hairdresser and receptionist.  In Step Five, the ALJ determined that Bulinski possessed the RFC for medium work.[5]  Consequently, he found

---

[4]The ALJ pointed out that there is evidence that Bulinski has engaged in some work activity since the alleged onset date of her disability.  Bulinski worked between July and September 1997 for senior citizen housing, but she did not work more than 20 hours a week. (Tr. 22).  Bulinski also testified that she worked as a receptionist between October 1997 and February 1998.  (Tr. 22).  She claimed that she was laid off when the job site closed.  *Id.*

[5]Medium work requires an ability to lift "no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds.  If someone can do medium work, we determine that he or she can also do sedentary and light work." 20 C.F.R. §§ 404.1567(c),

8

Bulinski not disabled and denied benefits.

## C.     Substantial Evidence for Bulinski's RFC

Bulinski argues that the ALJ's determination that she had the RFC for medium work is contrary to the medical record and her own testimony, and, as such, is unsupported by substantial evidence.  Consequently, she contends that the ALJ erred when he substituted his judgment for that of competent medical sources.  Bulinski's position is without merit.

The Regulations define RFC as "what [an individual] can still do despite [her] limitations."  20 C.F.R. §§ 404.1545(a), 416.945(a).  At the review level relevant here, the responsibility for determining a claimant's RFC rests with the ALJ.  20 C.F.R. §§ 404.1546, 416.946.  An ALJ's RFC assessment is a medical determination that must be based on probative medical evidence of record.  *See Gray v. Chater*, 903 F. Supp. 293, 301 (N.D.N.Y. 1995) (citing 20 C.F.R. § 404.1513(c), (d)(3)).  Accordingly, an ALJ may not substitute his own judgment for a competent medical opinion. *See Rosa*, 168 F.3d at 79; *Balsamo v. Chater*, 142 F.3d 75, 81 (2d Cir. 1998) (citation omitted).  Here, he did not do so.

Bulinski contends that the ALJ's finding that she could do medium

---

416.967(c).

9

work was solely based on the RFC assessments of non-reviewing state agency physicians.[6] (Tr. 339-346). As an initial matter, the ALJ's reliance on this RFC assessment was not improper. "State agency physicians are qualified as experts in the evaluation of medical issues in disability claims. As such, their opinions may constitute substantial evidence if they are consistent with the record as a whole." *Leach ex rel. Murray v. Barnhart*, No. 02 Civ. 3561 RWS, 2004 WL 99935, at *9 (S.D.N.Y. Jan. 22, 2004) (citing 20 C.F.R. § 416.927(f); *Mongeur v. Heckler*, 722 F.2d 1033, 1039 (2d Cir. 1983)); *see Saelee v. Chater*, 94 F.3d 520, 522 (9th Cir. 1996); Social Security Ruling (SSR) 96-6p.

Moreover, the ALJ based his RFC determination on many factors. He considered the medical records of Bulinksi's treating physicians, Drs. Murphy, Stewart, and Zyskowski, all of whom personally examined Bulinski. The ALJ properly concluded that the RFC assessments of the state agency consultants were consistent with the medical record.

Dr. Murphy examined Bulinski in October 1996. (Tr. 263). Dr.

---

[6]An RFC assessment conducted in January 1997 by a state agency physician, Dr. White, revealed that Bulinski was capable of performing medium work. (Tr. 317-324). A second RFC assessment conducted in May by a state agency physician, Dr. Hameed, was consistent with Dr. White's determination that Bulinski was capable of performing medium work. (Tr. 339-346).

10

Murphy's impression was bilateral carpel tunnel syndrome.  *Id.*  A subsequent EMG was normal and revealed no sign of carpal tunnel syndrome or of radiculopathy.  At that point, Dr. Murphy recommended therapy.  (Tr. 267).  The therapy helped to some degree, but Dr. Murphy referred Bulinski back to her primary health care physician, Dr. Mattern, for further treatment.  (Tr. 268).  Dr. Mattern referred Bulinski to Dr. Stewart, a neurosurgeon.

Dr. Stewart examined Bulinski on February 18, 1997.  (Tr. 325).  He noted that Bulinski was fifty pounds overweight.  (Tr. 326).  He stated, "I am not sure what exactly is going on in her case.  What I do know is that she does not need any type of neurosurgery procedure...[s]he seems to be basically a pain problem."  (Tr. 326).  Dr. Stewart suggested that Bulinski have a thorough psychological examination.  *Id.*

Bulinski was then examined by Dr. Zyskowski, a rheumatologist.  Dr. Zyskowski noted that Bulinski tested negative for Raynaud's phenomenon and cytopenia.[7]  (Tr. 329).  A past brain scan, cervical spine MRI and electrical study for carpal tunnel syndrome were all unremarkable.  (Tr.

---

[7]Cytopenia is a "deficiency in number of any of the cellular elements of the blood."  DORLAND'S ILLUSTRATED MEDICAL DICTIONARY 807 (28th ed. 1994).

11

328). A joint examination showed full range of motion of the shoulders, elbows, wrists, and small joints of the hand. (Tr. 329). Bulinski was able to walk on her toes and heels without difficulty, hop on each foot, and tandem walk. *Id.*

Lastly, Bulinski claims that the ALJ failed to develop the record because he did not obtain additional functional assessments or request the opinion of a vocational expert. There is nothing in the regulations or the case law that requires an ALJ to consider vocational testimony at the fourth step of a disability inquiry. If the plaintiff does not meet her burden of proof by establishing that she cannot do previous relevant work, as in this case, there is no need for the Commissioner to inquire further into the functional abilities of the claimant. *See Bapp v. Bowen*, 802 F.2d 601, 604 (2d Cir. 1986) (discussing the Commissioner's duty at step five to prove the claimant's ability to perform other work in the national economy); *See also McCalip v. Shalala*, No. 93-CV-4758, 1994 WL 774037, at *7 (E.D.N.Y. Aug. 29, 1994).

Upon review of the record, the state agency RFC assessments are consistent with and supported by the objective medical record, and the ALJ properly relied on them in making his determination. *See* 20 C.F.R. §§

12

404.1527(f), 416.927(f); SSR 96-6p.  Moreover, the same records were taken into consideration and amply discussed by the ALJ in his decision. (Tr. 14-16).  Accordingly, based on the above, the ALJ's RFC determination that Bulinski was capable of performing medium work was supported by substantial evidence and not erroneous as a matter of law.

### D. Treating Physician Rule

Bulinski argues that the ALJ erroneously disregarded the opinion of her treating physician, Dr. Mattern.  Specifically, she claims that the ALJ erroneously dismissed Dr. Mattern's opinion that Bulinski was "100% disabled" based solely on the doctor's failure to cite specific findings. Bulinski's arguments are misplaced.

Generally, the opinion of a treating physician is given controlling weight if it is based upon well-supported, medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence.  20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2); see Schaal v. Apfel, 134 F.3d 496 (2d Cir. 1998).  An ALJ may not arbitrarily substitute his own judgment for a competent medical opinion.  Rosa v. Callahan, 168 F.3d 72, 79 (2d Cir. 1999).  If the treating physician's opinion is not given "controlling weight," the ALJ must assess several factors to

determine how much weight to afford the opinion.  The factors are: the length of the treatment relationship, the frequency of examination by the treating physician for the condition(s) in question, the medical evidence supporting the opinion, the consistency of the opinion with the record as a whole, the qualifications of the treating physician, and other factors tending to support or contradict the opinion.  20 C.F.R. §§ 404.1527(d)(2)-(6), 416.927(d)(2)-(6).

Moreover, the "ultimate finding of whether a claimant is disabled and cannot work is 'reserved to the Commissioner.'"  *Snell v. Apfel*, 177 F.3d 128, 133 (2d Cir. 1999) (citation omitted).  "That means that the Social Security Administration considers the data that physicians provide but draws its own conclusions."  *Id.*  Thus, a treating physician's disability assessment is not determinative.  *Id.*  Furthermore, where the evidence of record includes medical source opinions that are inconsistent with other evidence or are internally inconsistent, the ALJ must weigh all of the evidence and make a disability determination based on the totality of that evidence.  20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2).

Bulinski contends[8] that the ALJ should have adopted the opinion of Dr. Mattern, Bulinski's family doctor, who concluded that Bulinski was 100% disabled.  This contentions is without merit.  As mentioned, the final determination of disability is reserved for the Commissioner.  The ALJ properly relied on the objective medical findings of Mattern's other treating physicians, as discussed above, and the RFC assessments of two state agency physicians.  Dr. Mattern's opinion that Bulinski is 100% disabled is unsupported by objective medical findings.  Moreover, it is inconsistent with the other medical evidence in the record.  Two different state agency physicians filled out RFC assessments for Bulinski and found her not disabled.  Both state agency physicians concluded that Bulinski could occasionally lift fifty pounds, frequently lift twenty-five pounds, and sit, stand or walk for six hours in an eight-hour day.  (Tr. 318, 340).

Accordingly, based on the above, the ALJ did not err in determining that Dr. Mattern's opinion was not entitled to controlling weight, and he properly developed the record.  Therefore, the ALJ's decision was supported by substantial evidence.

---

[8]Bulinski also argues that the ALJ disregarded the opinion of Dr. Bulawa.  It is correct that the ALJ does not refer in his decision to this doctor's opinion, but the administrative record does not contain a report from a physician by that name.  Furthermore, Bulinski cites to no specific facts or medical opinions provided by a "Dr. Bulawa."

15

**E.    Subjective Complaints of Pain**

Bulinski also claims that the ALJ improperly discounted her allegations of disabling pain and exaggerated the extent of her daily activities. The Commissioner is obligated to evaluate all of a claimant's symptoms, including pain, and the extent to which those symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence. 20 C.F.R. §§ 404.1529(a), 416.929(a). The ALJ must perform a two-step analysis. *See* 20 C.F.R. §§ 404.1529, 416.929; *see also Crouch v. Comm'r, Soc. Sec. Admin.*, 2003 WL 22145644, at *10 (N.D.N.Y. Sept. 11, 2003) (citation omitted). First, based upon the objective medical evidence, the ALJ must determine whether the impairments "could reasonably be expected to produce the pain[9] or other symptoms alleged ...." 20 C.F.R. §§ 404.1529(a), 416.929(a); *see Crouch*, 2003 WL 22145644, at *10. "Second, if the medical evidence alone establishes the existence of such impairments, then the ALJ need only evaluate the intensity, persistence, and limiting effects of a claimant's

---

[9] The pain must be properly evaluated, considering the applicant's credibility and motivation as well as the medical evidence of impairment to reach an independent judgment concerning the true extent of the alleged pain, and the degree to which it hampers the applicant's ability to engage in substantial gainful employment. *See Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979).

symptoms to determine the extent to which it limits the claimant's capacity to work." *Crouch*, 2003 WL 22145644, at *10 (citing 20 C.F.R. §§ 404.1529(c), 416.929(c)).

A plaintiff may suffer some degree of pain as a result of a condition. However, some pain does not automatically translate into disabling pain. *See Dumas v. Schweiker*, 712 F.2d 1545, 1552 (2d Cir. 1983) ("disability requires more than mere inability to work without pain"). Moreover, "[a]n individual's statement as to pain or other symptoms shall not alone be conclusive evidence of disability." *See* 42 U.S.C. § 423(d)(5)(A).

Where the alleged symptoms suggest that the impairment is greater than demonstrated by objective medical evidence, the ALJ will consider other factors. These factors include daily activities, the location, duration, frequency and intensity of symptoms, the type, effectiveness and side effects of medication, and other treatment or measures to relieve those symptoms. *See* 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3); Social Security Ruling (SSR) 96-7p. "The reasons for the credibility finding must be grounded in the evidence and articulated in the determination or decision." SSR 96-7p. Therefore, "[a]n [ALJ] may properly reject [subjective complaints] after weighing the objective medical evidence in the

17

record, the claimant's demeanor, and other indicia of credibility, but must [do so explicitly and] set forth his or her reasons with sufficient specificity to enable [the courts] to decide whether the determination is supported by substantial evidence." *Lewis v. Apfel*, 62 F. Supp. 2d 648, 651 (N.D.N.Y. 1999) (internal quotation marks, citation omitted); *see Brandon v. Bowen*, 666 F. Supp. 604, 608 (S.D.N.Y. 1987).

Here, Bulinski claims that she suffered from chronic and persistent pain that precluded her from engaging in even light work. In particular, she alleges that she suffers from severe pain from fibromyalgia, carpal tunnel syndrome, tendonitis, depression, chronic migraine headaches, irritable bowel syndrome, and generalized anxiety disorder. She also maintains that the ALJ exaggerated her daily living activities.

The ALJ's decision was based on substantial evidence for two reasons. First, as the ALJ noted, Bulinski applied for state unemployment benefits after the alleged onset date of her disability. In order to be eligible for unemployment, Bulinski claimed an ability to work. Yet, for the same period of time, she alleged an inability to engage in even light work for the purpose of her Social Security application. Bulinski cannot credibly assert her ability to work for the purpose of one government benefit while

18

simultaneously claiming an inability to work for another.

Secondly, the ALJ pointed out that Bulinski stopped working for reasons unrelated to the alleged disability impairments.  Bulinski testified that she was dismissed from her most recent position as a receptionist because the office in which she worked closed.  Moreover, Bulinski engaged in various daily activities.  She frequently drove, helped her children prepare for school in the morning, and grocery shopped with her husband.  Although she may have pain, "some pain does not mean disabling pain." *Dumas*, 712 F.2d at 1552.  The record also demonstrates that Bulinski recently traveled over 100 miles in individual trips in 1997 and 1998.  She once drove to South Carolina in 1997.  Her daily activities coupled with her lack of medical care belie her contention of disabling pain.  Accordingly, the ALJ's decision was based on substantial evidence.

**WHEREFORE**, for the foregoing reasons, it is hereby

**ORDERED,** that the decision denying benefits is **AFFIRMED**; and it is further

**ORDERED,** that the Clerk of the Court serve a copy of this Order upon the parties.

**IT IS SO ORDERED.**

November 16, 2005
Albany, New York

Gary L. Sharpe
U.S. District Judge

20